UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEDIA PRODUCTS, INC. DBA Devil's Film, <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-64, <br><br> Defendants. | Civil Action No. 12-CV-30083-KPN |

**DEFENDANT DOE 48'S MOTION TO SEVER, QUASH AND/OR FOR ISSUANCE OF A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW**

Comes now, Doe 48[1] (IP Address 75.69.117.177), by and through undersigned counsel, and hereby moves this Court to: quash and/or issue a protective order in connection with the subpoena directed to Comcast Cable ("Comcast") and to sever this action on the grounds of improper joinder.

### I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Media Products, Inc. DBA Devil's Film claims to be the copyright holder of the adult motion picture video titled *Teacher's Got a Tight Pussy 3* (the "Motion Picture"). Plaintiff alleges that Doe 48 and sixty-three (63) other unrelated Does are liable for the infringement and contributory infringement of Plaintiff's putative copyright in the Motion Picture. Per its now familiar practice, upon initiating this action Plaintiff sought issuance of subpoenas to various internet service providers seeking disclosure of the names, addresses, and email addresses of the subscribers to whom the alleged offending IP addresses are associated. Plaintiff seeks to use the information derived from such subpoenas not to pursue actual litigation, but rather to further its

---

[1] In order to protect her identity and not moot this Motion, movant is identified herein simply as Doe 48. If the Court wishes, Doe 48 will disclose her true identify to the Court in an in camera filing.

business plan of attempting to coerce subscribers -- *regardless of whether they actually engaged in the unauthorized download of the Motion Picture* – to pay thousands of dollars in settlements simply in order to avoid the embarrassment and potential risk of being publicly associated as a purveyor of hard core pornography.

**ARGUMENT**

**A. Pursuant to Fed. R. Civ. P. 26(c) and 45(c) This Court Properly May Consider Doe 48's Motion to Quash or for a Protective Order**

Federal Rule Fed. R. Civ. P. 26(c)(1)(A) empowers this Court, for good cause, to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by forbidding the disclosure or discovery of subpoenaed matters. Fed.R.Civ.P. 26(c)(1)(A) ("a party may move for a protective order in the court where the action is pending"). Good cause includes a showing that disclosure will cause a clearly defined and serious harm, which the court balances against the harm to the other party of restricting discovery. *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 162 (D. Mass. 2008). Moreover, although Fed. R. Civ. P. 45(c) provides that a motion to quash be filed in the district court for the district that issued the subpoena, Rule 45 does not alter the general rule that the court in which the case is filed is empowered to control the broad outlines of discovery. *See Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (district where case was pending had authority to issue protective order, pursuant to its right to control broad outline of discovery, even though the particular discovery dispute arose from subpoena issued in another district); *Best Western Int'l, Inc. v. Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695, at *2 (D. Ariz. July 25, 2006) (Rule 45(c) provides that subpoenas should be enforced by the issuing district, but does not alter the broader concept that the district where action is pending has the right and responsibility to control the broad outline of discovery); *Platinum Air Charters, LLC v.*

*Aviation Ventures, Inc.*, No. 2:05-cv-01451-RCJ-LRL, 2007 WL 121674, at *3 (D. Nev. Jan. 10, 2007) (same); *Pilcher v. Direct Equity Lending*, No. 99-1245 JTM, 2000 WL 33170865, at *4 n.8 (D. Kan. Dec. 22, 2000) ("Under Rule 26(c), the court in which the action is pending . . . has jurisdiction to issue a protective order limiting discovery"). A party's "discovery rights [in other districts] can rise no higher than their level in the district of trial." *Fincher v. Keller Indus., Inc.,* 129 F.R.D. 123, 125 (M.D. N.C. 1990). As such, this Court possesses the authority to both hear and grant the relief requested in Doe 48's motion to prohibit or limit discovery of her personally identifying information.

### B. The Subpoena Should Be Quashed and/or a Protective Order Issued as to Doe 48 Because the Information Sought is Not Relevant

"The foremost fundamental principle regarding subpoenaed discovery is that a subpoena duces tecum to obtain materials in advance of trial should be issued only when the party seeking the materials can show that the materials are evidentiary and relevant." *Straily v. UBS Fin. Servs., Inc.*, No. 07-cv-884-REB-KMT, 2008 WL 5378148, at *1 (D. Colo. Dec. 23, 2008); 81 Am. Jur. 2d *Witnesses* § 20. The term "relevant" as used in Rule 26 is broad, but not exhaustive. While matters which may aid a party in the preparation or presentation of its case are relevant, matters without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry. *See Lewis v. United Air Lines Transp. Corp.*, 27 F. Supp. 946 (D. Conn. 1939). Here, the subpoenaed information is not relevant to the causes of action set forth in the Complaint because as set forth in the Declaration of Doe 48 submitted herewith:

- Doe 48 neither has the Bit Torrent technology referred to in the Complaint on her computer or any other wireless device connected to her IP address, nor has used such Bit Torrent technology;

- Doe 48 lives alone and has never authorized or knowingly permitted any other person to access her wireless network, which was unprotected until recently because she did not know how to set up a new password; and

- Because Doe 48 lives in a large, multi-level apartment complex where wireless signals regularly cross unit and geographic boundaries, it would be virtually impossible for disclosure of her information to lead to the discovery of admissible evidence short of Plaintiff seeking leave to depose every resident and visitor in the complex and to undertake forensic examinations of all of their wifi-enabled devices to identify the actual infringer, if any.

As many courts in similar cases have acknowledged recently, there is a very real risk that subscribers whose information Plaintiff seeks are not the actual offender and thus courts should be very skeptical about subjecting such persons to disclosure of their identities. For example, in its widely noted recent decision in *In re: BitTorrent Adult Film Copyright Infringement Cases*, No. 2:11-cv-3995-DRH-GRB, Order & Report & Recommendation [Doc. No. 39] (E.D.N.Y. May 1, 2012), the United States District Court for the Eastern District of New York denied the film studio's request for early discovery to ISPs and explained:

> …[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones….Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call.

*Id.*, at *6.  *See also SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011); *Pac. Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-DMR, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011); *IO Group, Inc. v. Does 1-19*, No. C 10-03851 SI, 2011 WL 772909, at *1 (N.D. Cal. Mar. 1, 2011) ("[T]he ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes."); *Third Degree Films v. Does 1-3577*, No. C-11-0276(LB), 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011) ("[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works.").  Because plaintiff seeks information about the ISP subscribers who were assigned certain IP addresses instead of the Internet users who actually engaged in infringing activity allowing disclosure by Comcast will draw Doe 48 unfairly into the litigation, unjustly exposing her to public embarrassment and placing an undue burden on her to defend herself.  This is all the more true given that Doe 48 lives alone and thus there is not even a colorable argument that another member of her household may be the alleged infringer.

Additionally, since the demonstrated *modus operandi* of Plaintiff and other adult film studios like it overwhelmingly has been not to actually litigate these cases, but rather to use the personal information obtained from the ISPs to attempt to enter into settlement agreements with the individuals identified, there is a high likelihood that Plaintiff will demand a coercive settlement from Doe 48.  As typical settlement demands in such cases have been in the area of $3500, the cost for Doe 48 to defend and clear her good name could easily exceed such a settlement demand from Plaintiff and may unfairly result in her being pressured to settle a bogus claim simply because of economic pressures. Many courts evaluating similar cases have shared this concern.  *See, e.g., Pacific Century Int'l, Ltd. v. Does 1-37,* No. 12 C 1057, 2012 WL 1072312, at *3 (N.D. Ill. Mar. 30, 2012) ("the subscribers, often embarrassed about the prospect

...

of being named in a suit involving pornographic movies, settle"); *Digital Sin,* 2012 WL 263491, at *3 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement"); *SBO Pictures,* 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"). Accordingly, this Court should quash the Subpoena as to Doe 48 and/or enter a protective order prohibiting Comcast from disclosing her identity and personal identifying information.

### C. The Complaint Should Be Dismissed and/or Doe 48 Severed From This Action Because Joinder is Improper

Plaintiff's attempt to join Doe 48 with the other unrelated Does as putative joint tortfeasors under its BitTorrent "swarm" characterization theory is improper. Fed. R. Civ. P. 20(a)(2) provides that joinder is appropriate only if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). However, even if these parameters are met, joinder is not mandatory. The Court may order separate trials to protect any party against "embarrassment, delay, expense, or other prejudice." *See* Fed. R. Civ. 20(b). Where misjoinder occurs, the court may, on just terms, add or drop a party so long as "no substantial right will be prejudiced by severance." *AF Holdings, LLC v. Does 1-97*, No. C-11-3067-CW(DMR), slip op., 2011 WL 2912909, at *2 (N.D. Cal. July 20, 2011) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)).

Plaintiff's individual claims against Does 1-64 do not arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Plaintiff's suggestion that the mere alleged use of Bit Torrent Protocol by all of the Does (or the persons who may actually be responsible for downloading the motion picture) is sufficient to sustain their joinder in this action is not supportable.  The common alleged use of Bit Torrent does not necessitate the inference that Doe 48 or any of Does, in fact had any interaction with any of the other Does.  Numerous courts handling similar cases have found that alleged copyright infringement through the use of Bit Torrent Protocol is insufficient to sustain permissive joinder. *See In re: BitTorrent, supra,* at 19;  *Patrick Collins, Inc. v. Does 1-23*, No. JFM 8:12–cv–00087, 2012 WL 1144918, at *3 (D. Md. April 4, 2012); *CineTel Films, Inc. v. Does 1-1052*, No. JFM 8:11–cv–02438, 2012 WL 1142272, 1 (D. Md. April 4, 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011) (severing defendants); *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); *Third Degree Films v. Does 1-3577*, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants); *K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants); *IO Group, Inc. v. Does 1–435*, No. C 10–4382 SI, 2011 WL 445043, at *3–*6 (N.D. Cal. Feb. 3, 2011). *But see Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, No. 11-10802-WGY, Memorandum [Doc. No. 46] (D. Mass. Oct. 3, 2011).

As the court in *In re Bit Torrent* noted:

> Much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program. Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world."

*In re: BitTorrent supra*, quoting *Hard Drive Prods., Inc. v. Does 1-188*, 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011).

Further, courts have reasoned that defendants in analogous lawsuits were improperly joined based on the large time span between each defendant's alleged sharing of the file. *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939-TWT, slip. op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-02941 CAP, at 6 (N.D. Ga. Dec. 5, 2011) (time span of almost 3 months); *Liberty Media Holdings, LLC*, 277 F.R.D. at 675 (time span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. at 671 (time span of 2 months); *Hard Drive Prods., Inc.*, 809 F.Supp.2d 1150, 1163 (time span of 6 weeks).

In *Raw Films, Inc.*, the court held that "[d]ownloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." 2011 WL 6840590, at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 4 (N.D. Ga. Dec. 5, 2011) (order granting motion to sever). In explaining that finding, the court reasoned that:

> [t]he differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert. While the Defendants may have used the same peer-to-peer system, the Complaint does not allege that they were sharing with each other. For

> example, Doe 4, who is alleged to have been in the swarm on July 13, 2011, is unlikely to have been in the swarm at the same time as Doe 5, who is alleged to have been in the swarm on March 4, 2011.

*Raw Films*, 2011 WL 6840590 at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

Exhibit A to the Complaint shows that the transactions or occurrences of alleged infringement happened throughout a time span of approximately three (3) months. Merely that the Does separately and individually may have committed the same type of violation over the course of several months does not equate to participation in "the same transaction, occurrence, or series of transactions or occurrences." *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008).

Moreover, "[a]mong the factors to be considered by the court in exercising its discretion under Rule 21 are whether. . .judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark,* No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010); *see also,* 7 Charles Alan Wright, et al., Federal Practice and Procedure § 1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

Joinder of 64 unrelated Does in this case will result in severe practical problems moving forward. The respective defendants are likely to assert different legal and factual defenses. Further, the individual Does will undoubtedly identify different witnesses. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2

> might share a computer with a roommate who infringed Plaintiffs"
> works. . . . Wholesale litigation of these claims is inappropriate, at
> least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203,* No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)

As the case proceeds, Plaintiff is likely to make further discovery requests against each individual that will further increase complexity and cost. This is precisely the situation the Northern District of California confronted after failing to sever 52 Does in a similar case:

> [Plaintiff] would require nothing less than an inspection of the
> subscriber"s electronically stored information and tangible things,
> including each of the subscribers computer and computers of those
> sharing his internet network. . . . Presumably, every desktop,
> laptop, smartphone, and tablet in the subscriber"s residence, and
> perhaps any residence of any neighbor, houseguest or other sharing
> his internet access, would be fair game. Beyond such an
> inspection, [Plaintiff] might require still more discovery, including
> interrogatories, document requests and even depositions.

*Boy Racer, Inc. v. Does 1-52,* No. 11-CV-2329-PSG, at 4 (N.D. Cal. Sept. 13, 2011) (order denying further discovery). *See also, Pac. Century Int'l Ltd. v. Does 1-101,* No. C-11-02533-(DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) ("An internet based copyright infringement case with at least 101 defendants would prove a *logistical nightmare."* (emphasis added)); *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, hundreds of defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them — all of which they must pay their attorneys to review.").

In short, to avoid prejudice, undue delay, and to and maximize judicial economy, the court should sever the Doe defendants and/or dismiss this action for improper joinder.

## CONCLUSION

For the foregoing reasons, Doe 48 respectfully requests that this Court: (1) quash and/or issue a protective order prohibiting Comcast from disclosing her identity and other personally

identifiable information to Plaintiff, and (2) dismiss and/or sever the Complaint on the grounds of improper joinder.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JANE DOE 48<br>By her attorney, |
|  | /s/ Christine R. Fitzgerald<br>Christine R. Fitzgerald (BBO 637906)<br>Belcher Fitzgerald LLP<br>112 Water Street, Suite 203<br>Boston, MA 02109<br>(617) 368-6890 |
| Dated: July 13, 2012 | cfitzgerald@belcherfitzgerald.com |

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)2

I Christine R. Fitzgerald, hereby certify that I telephoned counsel for the Plaintiff on each of July 10, 11, 12, and 13 2012 and also emailed counsel on July 11 and 13, 2012 in an effort to resolve the issues raised in this motion. Unfortunately, my efforts were not successful as I was not able to reach counsel by telephone and counsel did not respond to my voice and email messages prior to the deadline for filing this motion.

　　　　　　　　　　　　　　　　　　　　/s/ Christine R. Fitzgerald
　　　　　　　　　　　　　　　　　　　　Christine R. Fitzgerald

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July, 2012, a true and correct copy of the foregoing was filed using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system and on all other parties via U.S. mail.

　　　　　　　　　　　　　　　　　　　　/s/ Christine R. Fitzgerald
　　　　　　　　　　　　　　　　　　　　Christine R. Fitzgerald